Mr. Lomeli raised issues in this case, only one of which is seriously contested by the government. The government acknowledges that Mr. Lomeli's citizenship claim is properly before this court, and the government makes no effort to defend the constitutionality of the derivative citizenship statute that was applicable to Mr. Lomeli's mother at the time of his birth. The sole remaining question, then, is how to remedy that constitutional defect. And as both this court's and the Supreme Court's precedents make clear, when a statute confers benefits in an unconstitutional manner, the preferred course is to extend that benefit to all individuals rather than to nullify it altogether. The Supreme Court's decision to Morales-Santana does not hold otherwise. Indeed, that case reinforces and reiterates the general preference for extension over nullification. While the Supreme Court there nonetheless declined to grant that remedy to Mr. Morales-Santana, the court did so because affording Mr. Morales-Santana his requested remedy in that case would have rendered the statute unconstitutional in a different way. Specifically, it would have treated unwed parents who give birth abroad differently to married citizens of the United States who gave birth outside the United States, treating them to different residency requirements. The court found that in light of that separate constitutional problem, it could not move forward with extending the remedy in that case. But this case presents no such problem. That is because if this court affords the requested remedy to Mr. Lomeli, that is extending the one-year residency requirement to both married mothers and unmarried mothers alike, there is no disparate treatment that will result from that remedy. And that was the holdup for the court in Morales-Santana. Indeed, in that sense, Your Honor, it will satisfy both prongs of the test articulated many times by the Supreme Court, including Heckler v. Matthews, which is when determining which remedy to fashion to a petitioner, like Mr. Lomeli here, the court looks at both congressional intent and the impact that that remedy would have on the rest of the statutory scheme. As noted, it was that second prong that was problematic in Morales-Santana that it would render a different part of the statute unconstitutional in a different way, and so the court couldn't move forward there. And so we don't have that problem here at all. And it's not just a post hoc unique interpretation we're asking the court to take of Morales-Santana in that regard. I'll note that two days ago, the U.S. Supreme Court and the Bar v. American Association of Political Consultants, that's case 19-631, issued a case, and I apologize, I've not yet had the opportunity to submit a 28-J letter on that recent case, but I'm happy to do so should this court find it useful. Justice Kavanaugh, on page 21 of that opinion, noted that reiterated the general preference for extending benefits in equal protection or disparate treatment cases, as opposed to nullifying the benefit altogether, but then, citing to Morales-Santana, noted that there can be cases that present complex questions, and those are, and I quote, for example, that would raise due process, fair notice, or other constitutional barriers to that requested remedy. That was the case in Morales-Santana. There was a separate constitutional barrier to affording Mr. Morales-Santana the remedy he requested. The Third Circuit made the same observation in the 2018 decision in Teneo. There, the court again emphasized that the reason the court decided the remedial issue in Morales-Santana the way it did was because it could not afford the remedy requested by the petitioner without creating a separate constitutional problem. Let me ask you this, counsel, because you're quite right that, and I don't think the government really even disputes the general preference for extending rather than nullifying benefits, the problem is really the crux of the reasoning in Morales-Santana is that, put to the choice, Congress would choose to preserve the general rule, and so how do you, and of course that case also talks about the importance of the residency requirement, how do you get around that rationale? I think there's two responses to that to your honor. I'll note first at the outset when the Supreme Court was talking about Congress's intent in fashioning the remedy, the court noted that it would be hardly permissible to ascribe a discriminatory intent to Congress in fashioning a remedy that would treat unwed parents differently than married parents, and that's the second prong of the Heckler analysis that we focused, the court made that point explicitly. It said we can't credit congressional intent as wanting to give everyone subject to one year requirement as to unmarried parents because that would create a separate constitutional problem. So I think that is one response to your honor's question. I'll also note that in, despite the courts holding that case, it did not actually strike section 1409c of the statute, the statute that treats unwed citizen mothers who give birth abroad, that's because it couldn't have underneath the United States Supreme Court precedent dating back for over 120 years. In the Wong Kim Ark case in 1898, and then again in the Afirm versus Rust case in 1962, the court emphasized quite clearly that while Congress has the authority to grant citizenship to individuals, it does not have the authority to take that citizenship away, and so the court in Morales-Santana could not have struck wholesale section 1409c from the statute because that would be effectively taking away the one-year residency requirement applicable to unwed citizen mothers and therefore taking away citizenship from a class of people who, under that statute, are citizens of this country. And so that statute is still in effect, and as a result, even though the court said it could not remedy the problem as to unwed citizen fathers, that's not true for children of married mothers, because there's no constitutional problem presented by extending the benefit to children of married mothers, and that's exactly what Mr. Lomelli is requesting here. I think, unless you guys have further questions on the remedial question, I did just want to highlight, because I think it's important, the actual underlying constitutional merits of the claim that is raised by Mr. Lomelli in this case, and I do so only because Justice Ginsburg, in her opinion for the U.S. Supreme Court in Morales-Santana, noted that even though they didn't grant the requested remedy to Mr. Morales-Santana in that case, that they were still obligated to address the constitutional question. That's in footnote 21 of that opinion, in which she's disagreeing with the dissent from Justice Connors, and so I do think the constitutional argument here is straightforward. Footnote 25 of Morales-Santana is explicitly clear that just as the statute cannot treat individual parents different based upon their gender, it also is prohibited from treating parents differently based upon the legitimacy of their children, at least to the extent that the statute does not survive heightened scrutiny here, and under the reasoning of Morales-Santana, the government does not satisfy that heightened scrutiny here. Indeed, the government hasn't made any effort to even attempt to defend the statute of its constitutionality here, and so we note that as well, that the merits question we think here is fairly straightforward and well settled under Supreme Court precedent. Unless your honors have further questions, I'm happy to reserve the remainder of my time. All right. Thank you, counsel. Let's hear from Ms. McKinney. Good morning. May it please the court, my name is Kathy McKinney and I represent the Attorney General in this matter. In this case, the court should deny the consolidated petition for review because the board acted well within its discretion in denying the petitioner's was entered in 2007, so the current motions to reopen petitioners fifth and sixth before the board are successive and untimely, and the motion to reopen before the board was not a vehicle to revisit his previously litigated claims. Petitioner had to show that he benefited from the change in the law in Morales-Santana, and this he cannot do. Petitioner doesn't benefit from the remedy in there. The court, rather than extending the benefit, the court struck down the one-year provision and did not apply it to the other classes in that case. There, Justice Ginsburg, in the opinion, noted that the statute at 1401A7 provides the main rule, the main rule applicable to petitioner and that was applied to petitioner's case by this court the first time the citizenship claim was litigated would be that his mother would have to establish 10 years of residency, and this this court already affirmed it from the district court holding that she failed to do. And there, it's worth noting that Justice Ginsburg refers to the provision in 1401A7 as the main rule. So there, by looking at it, the one-year continuous residence is also referred to by Justice Ginsburg as the exception to the rule. And if we look at the text of the statute, that also supports Justice Ginsburg's reasoning because the exception refers to notwithstanding the provisions in 1401A. So that provides more evidence for Justice Ginsburg's reasoning that 1401A7, the 10-year provision, is the main rule. And just to follow up a little bit with respect to that, I know that opposing counsel's fight to the Teneo decision, there the Third Circuit reached a contrary conclusion in a legitimization case. It wasn't a citizenship at birth case like we have here and like Morales-Santana was, but there the court noted that one of the reasons provided in Morales-Santana for the remedy they ultimately crafted in that case was the concern of creating a different and separate constitutional violation if the one-year exception were extended to unwed parents rather than married parents. Just worth noting that that was one of at least three reasons that Justice Ginsburg gave for the court's crafting of the remedy in Morales-Santana. I mean, the first was looking at the statute. The court determined that the 10-year rule was the main rule. The court also looked to congressional intent, finding that if put to the court the choice that the court determined that Congress would have held that the recognition of residents in the U.S. was more important and Congress would have preferred the preservation of the general rule. And then, of course, also not allowing the exception, one-year exception, to swallow the rule. So in this case, the court should affirm the agency's decision and the government, I think also opposing counsel notes that the government focused on remedy in this case rather than the merits of the equal protection claim. And the reason for that is because petitioner here already had his citizenship claim decided and so he's benefit from a change in the law. And in Morales-Santana, although it did change the landscape, the remedy there doesn't benefit him because the court there struck down the one-year provision. And in addition, the court in Morales-Santana already determined the remedy for an equal protection violation with respect to the discriminatory exception and there's no reason for this court to come to an opposite conclusion. But if this court disagrees about the remedy or that this case can be resolved given the procedural posture of the case, that in this case the citizenship claim was previously litigated, or that remedy is not positive, the government would request a briefing on the merits of the other aspects of the equal protection claim. The court need not grapple with standing or the standard to be applied if the court agrees with the agency in this case that the petitioner has not shown a change in the law that benefits him because he doesn't benefit from the remedy in Morales-Santana. Also just to point out, I don't think it's entirely clear, but again the basis of the agency's decision was remedy. It's not entirely clear that extending the problem if the disclaimer class is married mothers and we have unwed mothers, unwed fathers, and married fathers, we would still then have a distinction for married fathers separately held out for that. So the government urges the court to deny the consolidated petition for review because the petitioner has not shown that he benefits from the remedy in Morales-Santana. There was therefore no exception to the motion to reopen, which was untimely and successive, and the court should deny the petition for review. If the court doesn't have any further questions? It doesn't appear that we have any questions. Thank you, counsel. Thank you, Your Honor. If I may make just a couple of brief points in rebuttal. Of course. Your Honor, just very briefly, counsel for the government focused on the issue of government congressional intent in Morales-Santana and the court's opinion on that point. We've already talked about that at length. I did want to note one aspect. However, the congressional intent analysis in that case under the first step of the Heckler test was focused on whether or not it was sensible to treat individuals differently based upon the risk of statelessness in that case. And the Supreme Court didn't reject the idea that statelessness altogether is an impermissible objective. It said it wasn't sufficiently tailored to survive heightened scrutiny, but acknowledged that this is, in fact, a legitimate problem. And so in this case, if Congress has any intent, if we're going to look at congressional intent as to whether it would keep the one-year requirement for unwed citizen mothers or not, there's a legitimate basis for saying that Congress wanted to protect against statelessness, at least as the children of unwed mothers. And that would be protected if this court were to extend the remedy also to children of married mothers, because everyone would be subject to a one-year requirement. And so in that sense, I think that the congressional intent piece also points in favor of Mr. Lomelli's requested remedy in this case. I also separately just want to note the government requested additional briefing, if possible, on the merits of the equal protection claim. That issue is front and center in our opening brief. The government declined to respond on it. Respectfully, we object to the notion that they can, after the fact, come in and raise additional arguments simply because they ended up losing enough arguments they did raise. Finally, Your Honor, on the equal protection piece, the government suggests that there would be a constitutional disparity that would still exist in the statutory scheme if the remedy requested by Mr. Lomelli was granted to children of married mothers. Even if that's true, and I'm not sure it is, as we explained in our brief, that is true because of the court's opinion in Morales-Santana. Regardless of what this court does in this case, children of unwed citizen fathers are treated differently than children of unwed citizen mothers. And that's because, as I mentioned previously, the court cannot have struck the 1409C provision, because doing so would remove citizenship from individuals born to unwed citizen mothers who satisfy a one-year but not a 10-year rule. So it's still there. The Supreme Court's opinion, even if it blesses that disparate treatment due to a lack of remedy for unwed citizen fathers, doesn't mean that the court should also permit disparate treatment of children of married parents, which is what Mr. Lomelli's case presents here. Unless the court has any further questions, I have the rest of the groups. Mr. Gross, are you still asserting the position that the current five-year rule should apply to Mr. Lomelli if we disagree with you about the impact of Morales-Santana? Yes, Your Honor. So our primary argument is that the one-year remedy is the appropriate course here, because treating the five-year requirement is applying to only individuals born after that date. The one-year remedy is the only way to resolve the constitutional violation suffered by Mr. Lomelli's mother here. To the extent the court disagrees, we explain in our brief that the Supreme Court at the conclusion of Morales-Santana simply said that the five-year rule should apply prospectively without indicating what that meant. We think, under the plain language of that statute, it has to mean that any citizenship claim brought after the fact, after the date of that decision in 2017, does in fact, excuse me, 2016, is now subject to a uniform five-year requirement. And we say that for the same reason I mentioned earlier, in that the court cannot have created some sort of retroactive doctrine where it took away a one-year requirement that previously applied to unwed citizen mothers. It has to be the case now that every case moving forward, in order to be subject to a uniform regime, is all claims brought after that date. So if the court disagrees with our one-year analysis, at the very least, this court should take the Supreme Court at its word that the five-year requirement now applies prospectively to all individuals raising citizenship claims, and then transfer this case for additional fact-finding to determine whether or not Mr. Lomelli does in fact satisfy that standard. Unless the court has any further questions, I'll spit the rest on our briefs. Thank you very much, counsel, both sides for your argument today. The matter is submitted, and thank you, Mr. Gross, for accepting the appointment in this case. It's a privilege. Thank you, Your Honor.
judges: Fernandez, Nguyen, Bolton